UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLY PUBLICATION ONLY

SPORTCO, INC.,

                           Plaintiff,

- against -

TRT TACTICAL, LLC,

                           Defendant.

MEMORANDUM AND ORDER

14-CV-6044 (JG)(GRB)

APPEARANCES

    ABELMAN, FRAYNE & SCHWAB
        666 Third Avenue
        New York, NY 10017-5621
    By:    Anthony A. Coppola
           Jeffrey A. Schwab
           Anthony J. Difilippi
        *Attorneys for Plaintiff*

    SCULLY SCOTT MURPHY & PRESSER, P.C.
        400 Garden City Plaza, Suite 300
        Garden City, NY 11530
    By:    Steven I. Wallach
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        On October 15, 2014, Sportco, Inc. ("Sportco"), a gun manufacturer, brought an action for infringement against another gun manufacturer, defendant TRT Tactical, LLC ("TRT"), alleging that TRT's use and sale of certain handgun grips and magwells violated Sportco's U.S. Patent No. 7,743,542 ("the '542 Patent"). The '542 Patent relates to an assembly for facilitating the insertion of an ammunition magazine into a pistol. According to the

complaint, TRT manufactured and sold a product assembly covered by the '542 Patent, which consisted of a magwell and a pair of machined hand grips. Compl. ¶ 16.

On November 25, 2014, I "so ordered" a consent judgment signed by each party's counsel and retained jurisdiction over the matter "for purposes of the enforcement of [the] Consent Judgment." Stipulated Consent Judgment (the "Consent Judgment"), ECF No. 10, ¶ 2.

On April 9, 2015, Sportco filed a motion for an adjudication of contempt, alleging that TRT had violated the Consent Judgment. Specifically, it alleged that TRT was still selling the offending hand grips that had been the subject of the original complaint, and that its website had continued to advertise the grips as "designed for use" with TRT's offending magwell. *See* Declaration of Robert Novak ("Novak Decl.") ¶ 20, Ex. 5. TRT submitted opposing papers and I heard oral argument on the motion on June 9, 2015.

For the reasons set forth below, Sportco's motion is granted.

A.  *The Legal Standards*

   1.  *The Standard for Contempt*

A court may exercise its discretion to adjudicate a party in civil contempt "only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989). It is not necessary for the moving party to show that the violating party disobeyed the court's order willfully. *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008) (citing *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985)).

2. *The Remedy*

"[T]he sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 302-04 (1947)). A district court has "broad discretion to design a remedy that will bring about compliance" when the purpose is coercive. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982). However, "when the purpose is compensatory, the order should be fashioned so as to reimburse the injured party for his actual damages." *Id.* Civil contempt sanctions may not be imposed as a punitive measure. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).

District courts have usually focused on the willfulness of the contemnor's misconduct in deciding whether to award attorney's fees and costs. *Weitzman*, 98 F.3d at 719. Although the Second Circuit has yet to definitively answer whether a finding of willfulness is required, *see Jacobs v. Citibank, N.A.*, 318 F. App'x 3, at *5 n.3 (2d Cir. 2008), it is beyond dispute that such a finding strongly supports an award of fees and costs. *See N.Y. State Nat. Org. for Women v. Terry*, 159 F.3d 86, 96 (2d Cir. 1998); *Weitzman*, 98 F.3d at 719; *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130-31 (2d Cir. 1979).

B.  *Application of the Governing Standards to This Case*

As for the first element of the contempt analysis, I conclude that the Consent Judgment in this case is clear and unambiguous. TRT enlisted counsel to help in drafting the terms, and agreed to be permanently enjoined from:

> (a) manufacturing, having manufactured, producing, distributing, importing, purchasing or selling any product which embodies the subject matter of the invention of the '542 Patent;

3

> (b) engaging in any other activities constituting an infringement of the '542 Patent; and
>
> (c) inducing, contributing to, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to herein.

Consent Judgment ¶ 8.

In the Consent Judgment, TRT represented that it had manufactured a total of 50 units of products covered by the claims of the '542 Patent. *Id.* ¶ 7. Remy Trotabas, the President of TRT, explained that this language meant:

> TRT [1] had manufactured approximately 50 CustomSpeed P226 DA/SA magwells with anchoring tabs and [2] had machined recesses in approximately 50 pairs of pistol grips to attach the magwells to the butt of a pistol handle. In other words, each unit is an assembly consisting of one magwell with anchoring tabs and one pair of machined pistol grips for a Sig Sauer P226 DA/SA.

Declaration of Remy Trotabas ("Trotabas Decl.") ¶ 13, ECF No. 21.

Furthermore, the complaint that precipitated the Consent Judgment alleged that the entire assembly, including the grips, violated the '542 Patent. The complaint claims that TRT "manufactures . . . magazine entrance guide assemblies, including but not limited to its 'Magwell for Sig P226 DA/SA (PN: 225-11)' *with associated third-party hand grips*, which embody the subject matter protected under the '542 Patent." Compl. ¶ 16 (emphasis added). Thus, it is clear and unambiguous that the Consent Judgment prohibits TRT from selling the machined hand grips which were covered by the '542 Patent.

As for the second element, the proof that TRT failed to comply with the order is clear and convincing, *i.e.*, there is "a quantum of proof adequate to demonstrate to a reasonable certainty that a violation has occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotations omitted). Here, though TRT disposed of its inventory of

offending magwells, *see* Trotabas Decl. ¶ 16, it nonetheless admits to selling the same machined hand grips that were the subject of the Consent Judgment. *See* Def. Opp. Br. at 5; Trotabas Decl. ¶ 18 ("After the consent judgment was entered, TRT had an inventory of about 15 pairs of grips that I had machined to receive anchoring tabs on the CustomSpeed P226 DA/SA magwell. I wished to sell off that inventory of grips for use solely as grips. Since November 25, 2014, I have sold four pairs of such grips and have an inventory of about 11 pairs remaining."). Moreover, for months after the Consent Judgment, TRT's website continued to state that the grips were compatible with TRT's offending magwells, and TRT removed that statement only after Sportco complained about it. Novak Decl. ¶ 20, Ex. 5; Trotabas Decl. ¶ 21.

Finally, I cannot conclude that TRT has diligently attempted in a reasonable manner to comply with the Consent Judgment. Rather, TRT's breach of the order was intentional. The company continued to sell the very same machined grips that it agreed to refrain from selling in the Consent Judgment. Though TRT eventually removed the website language advertising the compatibility of the grips with the Sportco-patented magwells, it did not do so until Sportco's lawyers complained of the violative behavior months after the Consent Judgment was ordered. *See* Declaration of Anthony J. Difilippi ("Difilippi Decl."), Ex. 2, ECF No. 13-2. Indeed, Sportco sent a letter to TRT, dated March 3, 2015, notifying TRT that it was in breach of the Consent Judgment and requesting, *inter alia*, that TRT desist from selling the machined hand grips. *Id.* Trotabas responded via email, "Beyond the apology expressed above and the removal of any leftover [website] reference - a measure we took the day we received your letter - we can not [sic] accommodate the demands expressed in your letter dated March 3[,] 2015." Difilippi Decl., Ex. 3, ECF No. 13-3. In short, when confronted by Sportco, Trotabas decided to continue selling the hand grips anyway.

5

Since TRT deliberately violated the Consent Judgment, I conclude that an award of reasonable attorney's fees and costs is an appropriate remedy. Given the limited number of remaining hand grips in TRT's inventory, and the lack of any showing that TRT has manufactured violative assembly components post-Consent Judgment, I will not impose coercive sanctions. *See* Trotabas Decl. ¶¶ 13, 15. The award of fees and costs is limited to those incurred in prosecuting the motion for an adjudication of contempt, and will exclude all fees and costs prior to the entry of the Consent Judgment on November 25, 2014. *See Vuitton et Fils*, 592 F.2d at 130-31 ("Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorneys' fees, if the violation of the decree is found to have been willful.").

## CONCLUSION

For the foregoing reasons, I adjudicate the defendant TRT Tactical, LLC in contempt of my November 25, 2014 Order. I order TRT Tactical, LLC to (1) immediately cease and desist from any and all activities which violate the Consent Judgment; (2) provide an independent and verified accounting of all of the violative hand grip sets and magwells it has manufactured, sold or imported from June 24, 2014 to date; (3) provide an independent and verified accounting of all existing inventory of the violative hand grip sets; (4) surrender all existing inventory of the violative hand grip sets to Sportco's counsel for destruction; (5) remit to Sportco all revenue it generated from the sale of the violative hand grip sets from November 25, 2014 to date; and (6) reimburse Sportco for their reasonable attorney's fees and costs incurred after November 25, 2014 in bringing this motion for contempt.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 25, 2015
Brooklyn, New York